CHRISLAW and others, Respondents, v. VILLAGE OF CLINTON, Appellant.

*March 2—March 31, 1964.*

For the appellant there were briefs by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs*.

For the respondents there was a brief by *Wickhem, Consigny & Sedor* of Janesville, and oral argument by *Gilbert D. Sedor.*

HALLOWS, J. We consider the trial court must be reversed on the ground the defendant village has acquired a right to use the drain across the plaintiffs' land by virtue of sec. 144.05, Stats.

The state board of health has general supervision and control of sewerage systems and refuse disposal in order to protect the public health and comfort. The important problem of disposing of industrial and urban waste and sewage has been met by the legislature deciding that if sewage-disposal plants complied with the requirements of the state board of health, the outflow or effluent from such system might be discharged into any stream or drain under circumstances set forth in sec. 144.05 (1), Stats. The owner of land over which such drain is constructed may apply to the circuit court to determine damages, if any, and unless such suit is instituted within six months after the system is completed, such suit shall be barred. It is contemplated inverse condemnation proceedings would be used. Sec. 144.05 (2).[1] This section has been held to be constitutional, *State ex rel. Martin v. Juneau* (1941), 238 Wis. 564, 300 N. W. 187. It affords damages for the acquisition or the taking of a right-of-way for the drain. The section does not bar a suit for

---

[1] Sec. 144.05. "SEWAGE DRAINS. . . .

(2) The city or village or the owner of land through which the drain is constructed may apply to the circuit court of the county in which the land is located to determine the damages, if any. No injunction against the use shall be granted until the damages are finally determined and payment refused. Unless within six months after the system is completed the owner of the land shall institute such proceedings he shall be barred. The proceedings shall be according to chapter 32 of the statutes, so far as applicable."

damages for creating a nuisance in the use of the drain. *Stearns v. State Committee on Water Pollution* (1956), 274 Wis. 101, 79 N. W. (2d) 241; *Hasslinger v. Hartland* (1940), 234 Wis. 201, 290 N. W. 647; *Winchell v. Waukesha* (1901), 110 Wis. 101, 85 N. W. 668.

The drain on the plaintiffs' land connecting natural water courses was originally installed in 1914 as a result of an agreement between the plaintiffs' predecessors and Bowman Dairy Company. Four years later the village began using the open ditch and drain for the disposal of its sewage effluent from its treatment plant. At that time sec. 1407–1, 1 and 2, Stats., predecessor of sec. 144.05, was in existence having been created in 1917 by ch. 430. That section provided the owner of the land through which such ditch or drain was constructed could apply to the circuit court within six months to have ascertained the compensation to which the owner of the land might be entitled as damages for the additional burden on his land caused by the use of such ditch or drain for the outflow from the sewer system. The record does not show whether the sewage-disposal plant of the defendant was approved in 1918 by the state board of health, but it may be reasonably presumed the system was so constructed.

It is argued neither this section nor sec. 144.05 (2), Stats., would be applicable because the drain was constructed by the plaintiffs' predecessors and not by the village. Neither section requires the village to construct the drain. Sec. 144.05 (2) refers to the owner of the land through which the drain is constructed. The operation of a sewerage system or plant is a governmental function performed for the protection of the citizens. *State ex rel. Martin v. Juneau, supra.* We do not interpret the section so narrowly as to require the city or village to actually construct the drain to carry away its sewage effluent where the village uses an existing drain upon private property as part of a natural watercourse. The

purpose of the statute was to grant the municipality a right-of-way which is not dependent upon who builds the drain but upon the use of another's land for the limited purpose of a means to dispose of the sewage.

The trial court was of the opinion the use of the plaintiffs' drain originated in permission. Assuming this finding to be sustained as we must on this motion, such permission would not prevent the application of sec. 144.05 (2), Stats., or its predecessor section. Both sections require an action to be brought within six months after the system is completed. The effect of the statute and the certainty of the means of disposing sewage could always be impaired and ultimately frustrated if an owner could by the doctrine of permissive use toll the statute. Neither public policy nor fairness commands the superiority of permissive use over the requirements of the statute.

The village has used the drain for some forty-odd years. From 1918 to 1934 no complaints were made but in the latter year the then-owner Diedrich complained to the village and again in 1939 he complained to the state board of health that there was a strong stench and the drain tile would clog causing an overflow to his damage. Similar complaints were made by an owner Roy C. Chrislaw in 1951 and 1958, but no action was commenced until the present plaintiffs became the owners of the property.

The trial court was of the opinion the use was permissive at least until 1951 and that the building of the new sewage-disposal plant in 1958 was not of such significance as to make sec. 144.05 (2), Stats., applicable. Since the village acquired a right-of-way in 1918 the changes in the sewage-disposal plant in 1958 were unimportant unless they were of such great significance as to constitute a new or additional use. The trial court considered the 1958 changes insufficient to call for sec. 144.05. We are of the opinion that assuming

the defendant did not acquire a right in 1918, it did acquire a right in 1958 upon the construction of the new sewerage plant.

True, the plans of the new sewer system referred to the effluent's being discharged into a ditch which led to Turtle creek, a tributary of Rock river. But, we deem this sufficient notice to the plaintiffs that the present watercourse and drain would be continued to be used by the expanded plant. The complaints of 1951 had led the board of public health to require the village to provide a sewerage plant which would eliminate the complaints of raw sewage being permitted into the disposal system. We believe there to be an appreciable change in the manner of treatment of the sewage and capacity of the plant and of the circumstances created by the operation of the new plant in 1958 to put the plaintiffs on notice to protect their rights under sec. 144.05 (2), Stats. The section does not require the village to commence condemnation proceedings to acquire a right over the plaintiffs' property but requires the owner to commence a suit within six months to recover his damages for such action on the part of the village or be barred. While it is true sec. 144.05 contemplates the existence of a new drain or the new utilization of a natural drain, the section is not to be confined to such situations.

The reversal of the trial court will not result in a dismissal of the complaint because the complaint still alleges a nuisance. While some findings of fact were made by the trial court prior to the amendment of the pleadings, no formal findings of fact and conclusions of law were prepared after the court's first memorandum decision. The case should be remanded for findings of fact and conclusions of law and for further proceedings not inconsistent with this opinion.

*By the Court.*—The order is reversed, and the case remanded for further proceedings not inconsistent with this opinion.